UNITED STATES of America, Plaintiff-Appellee,

v.

Burnell G. WATSON, Defendant-Appellant.

No. 79–2337.

United States Court of Appeals, Seventh Circuit.

Submitted April 10, 1980.*

Decided June 11, 1980.

* This appeal is considered on the briefs and record, pursuant to the parties' motion to waive oral argument, and this Court's agreement thereto on April 10, 1980.

**1200**

John E. Gambill, Allen & Korkowski & Associates, Rantoul, Ill., for defendant-appellant.

Margaret Halpern, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., Diane Lotko-Baker, U. S. Dept. of Justice, Antitrust Div., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and JAMESON, Senior District Judge.**

CUDAHY, Circuit Judge.

Defendant Burnell Watson was convicted after a jury trial of making false statements before a grand jury in violation of 18 U.S.C. § 1623(a).[1] The grand jury before which Watson allegedly testified had been impaneled in Danville, Illinois,[2] to investigate possible violations of the federal antitrust and mail fraud statutes involving conspiracies to rig bids on municipal and state highway construction projects. The indictment[3] charged Watson, a highway contractor, with making a false declaration when he responded in the negative to the following question:

> Have you ever asked any other contractor to submit a bid higher than the amount which you intended to submit?

On appeal, Watson raises five alleged errors and asserts that he is entitled at least to a new trial. Finding each of his objections lacking in merit, we affirm the conviction.

### I. Sufficiency of the Evidence

■ Watson argues that the evidence adduced at trial was insufficient to prove that he ever asked any other contractor to submit a bid higher than the amount which he intended to submit.[4] Because a holding in Watson's favor on this point would preclude a retrial, see Burks v. United States, 437 U.S. 1, 15–17, 98 S.Ct. 2141, 2149–2150, 57 L.Ed.2d 1 (1978), it is important to consider this argument initially. After reading the record and viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Zarattini, 552 F.2d 753, 761 (7th Cir.), cert. denied, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977), we find we must reject Watson's contention.

---

** The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

1. Section 1623(a) provides:
 Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. At the time the grand jury was impaneled, Danville was in the Eastern District of Illinois. By the time the indictment issued in this case, the city had been reassigned to the Central District.

3. Except where otherwise indicated, all references in this opinion to an indictment will be to that filed on August 8, 1979, and not to the first indictment which was withdrawn by the government.

4. We are perplexed by this argument in light of the fact that defendant concedes elsewhere in his brief on appeal that "the evidence of . . . [his] submitting complementary bids was clear and convincing" and states "the admitted evidence removed all doubt of defendant's guilt."

To convict Watson the jury was required to find that, in testifying under oath before a grand jury, he knowingly made a false declaration as to a material[5] fact when he denied ever having requested a complementary bid. *See United States v. Whimpy*, 531 F.2d 768, 770 (5th Cir. 1976). Watson himself admitted he had appeared before the grand jury and given the testimony which formed the basis for the indictment in this case. To prove the elements of falsity and knowledge, the government called three other road building contractors, Henry Eppel, Virlon Suits, and Leonard Tobey to testify about the bidding procedures for numerous contracts for which they competed together with Watson. Both Suits and Tobey testified that on several occasions Watson had told them what amount their bids should exceed. Watson has brought to our attention inconsistencies in the testimony of the government witnesses as well as questions about their credibility. These problems were brought out at trial, and we believe they are matters properly left for resolution by the jury. *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 128 (7th Cir. 1978). Similarly, we find Watson's contention on appeal that he had no motive to seek complementary bids was also an argument presented to the jurors and apparently rejected by them. We see no warrant in the record for disturbing the verdict.

## II. *Evaluation of Materiality of the Alleged Falsehood*

 As another ground for reversal, Watson contends that the court improperly applied a preponderance-of-the-evidence standard instead of a beyond-a-reasonable-doubt test in evaluating the materiality of his statement to the grand jury. Although proof of a statement's materiality, defined as its "effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation," *see United States v. Devitt*, 499 F.2d 135, 139 (7th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), is an essential element of the crime charged in the indictment, it is well settled that the determination of materiality is a question of law for the court. *See United States v. Smith*, 538 F.2d 159, 163 (7th Cir. 1976); *United States v. Demopoulos*, 506 F.2d 1171, 1176 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975). *Cf.* Model Penal Code § 241.1 (1962). "Since the issue of materiality is a legal question, not a question of fact, the government need not prove materiality beyond a reasonable doubt . . ." *United States v. Giacalone*, 587 F.2d 5, 7 (6th Cir. 1978), *cert. denied*, 442 U.S. 940, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).[6] Neither

---

**5.** As part II, *infra*, explains, satisfaction of the element of materiality is a question to be resolved by the court preliminarily to jury deliberation.

**6.** In *United States v. Stassi*, 443 F.Supp. 661, 666 (D.N.J.1977), *aff'd* 583 F.2d 122 (3d Cir. 1978), *overruled on other grounds, Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 2196 n. 10, 60 L.Ed.2d 743 (1979), the court did state that in a prosecution under 18 U.S.C. § 1623(a), "The Government . . . retains the burden of proving knowledge, falsity, and materiality of the statement or statements in question *beyond a reasonable doubt*. 1970 Code Cong. & Admin.News, p. 4024; *United States v. Slawik*, 548 F.2d 75, 87 (3d Cir. 1977)." (emphasis supplied)

We note that neither of the authorities cited by the district court in *Stassi* supports the proposition that materiality must be demonstrated beyond a reasonable doubt. *United States v. Slawik*, 548 F.2d at 79 & 87, merely states that materiality, as an essential element

of the crime of making false declarations before the grand jury, is a question of law to be determined by the court.

Congress enacted § 1623 as part of the 1970 Organized Crime Control Act, 84 Stat. 922 *et seq.*, to facilitate perjury prosecutions. H.Rep.No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News, pp. 4007, 4008. The House Judiciary Committee report recognized materiality as an essential element of the crime established by the new section. *Id.* at p. 4023. In noting that § 1623(e) abandons the two-witness rule previously applied in all perjury prosecutions, the committee report stated that "proof beyond a reasonable doubt [is] . . . sufficient for conviction [under this section]." *Id.* at p. 4024. There is no indication, however, that this reference applies to more than just the elements of the crime which are to be submitted for jury determination. Nowhere does the report manifest a legislative intent to alter the traditional rule that the element of materiality is a question of law for the court.

do we believe, as the government contends, that the prosecution need show materiality by a preponderance of the evidence. As a question of *law*, there cannot appropriately be *any* evidentiary or factual burden with respect to the issue of materiality. A question of law is by definition susceptible of only two answers: "yes," the requirements of legal principle are met or "no," they are not met. There is, in theory at least, no continuum of assurance and dubiosity as to the establishment of a proposition of law similar to the varying degrees of certainty and uncertainty which may be ascribed to propositions of fact. Although the trial judge here stated he determined materiality by a standard of "more probably true than not true, by the preponderance of the evidence," we believe this reference to evidentiary standards may be regarded as gratuitous and harmless. We find the government has shown (and the district court has concluded) that defendant's alleged false declaration to the grand jury was material. The declaration had a "tendency . . . to influence . . . [the grand jury's] investigation."

III. *Compliance with the Speedy Trial Act*

▮ Watson urges error in the district court's denial of his motion to dismiss for failure to place him on trial within the time limit required under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*[7] Without addressing the merits of the parties' contentions regarding calculation of time periods under the Act, we note that dismissal is the appropriate sanction for the violation alleged by Watson. 18 U.S.C. § 3162(a)(2). Under the terms of the Act, however, this sanction applies only "to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." 18 U.S.C. § 3163.[8] Until that time, the

sanction of dismissal is inapplicable under the express language of the statute. *United States v. West,* 607 F.2d 300, 305 n. 5 (9th Cir. 1979); *United States v. DeJesus Moran-Rojo,* 478 F.Supp. 512, 513 (N.D.Ill. 1979). *Accord, United States v. Hooper,* 596 F.2d 219, 224 (7th Cir. 1979) (finding the sanction of dismissal unavailable before its original effective date); *United States v. Gandara,* 586 F.2d 1156, 1161 (7th Cir. 1978) (same).

The first indictment in this case was filed on May 18, 1979, and was dismissed on motion of the government on July 11, 1979. Watson was reindicted on August 8, 1979. It is indisputable that his prosecution commenced prior to July 1, 1980. Accordingly, the sanction of dismissal is unavailable for alleged violations of the standards of the Speedy Trial Act.

IV. *Admissibility of Evidence of Other Crimes*

As previously noted, the indictment charged Watson with falsely responding to a question whether he had ever requested other contractors to submit a complementary bid on his behalf. At trial, he moved *in limine* for a two-pronged order excluding evidence (1) that Watson "had been involved in bid rigging" and (2) that he "submitted complementary bids at the request of any other contractor." The trial judge denied the motion, and on appeal, defendant contends such denial was error.

Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of crimes extrinsic to the one charged in the indictment if such evidence is offered to prove knowledge (and like matters) rather than merely to prove criminal disposition.[9]

---

7. Watson has not contended that the alleged delay violated his constitutional right to a speedy trial.

8. As originally adopted, the sanction of dismissal would apply only to indictments filed on or after July 1, 1979. Congress, however, amended the act in 1979 to provide that the sanction of dismissal would apply only to indictments filed on or after July 1, 1980. Act of August 2, 1979, Pub.L.No. 96–43, § 6, 93 Stat.

328 (codified in 18 U.S.C. § 3163(c)). The indictment herein was filed on August 8, 1979.

9. Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Watson does not dispute that the evidence he sought to exclude by his motion *in limine* is relevant to the question whether he knew the negative answer he gave to the grand jury was false. Watson does contend, however, that the admission of the evidence was improper because it was not necessary to the government's case and because it "made the jury conclude that the [d]efendant had a propensity for perjurious acts" despite a cautionary instruction that the evidence was to be considered only with regard to the element of knowledge. These arguments are apparently based on Rule 403 of the Federal Rules of Evidence.[10]

 The balancing of probity and prejudice required under Rule 403 is committed to the sound discretion of the trial judge, *United States v. Fairchild*, 526 F.2d 185, 186 (7th Cir. 1974), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976), and we are "obligated to afford substantial deference to the evidentiary ruling of the trial court." *United States v. Dolliole*, 597 F.2d 102, 107 (7th Cir. 1975). Although our review might have been facilitated by written findings on this issue by the district court, we do not believe the district court here abused its discretion in admitting the challenged evidence.

The evidence adduced at trial showed a scheme for the exchange of complementary bids. Evidence that Watson asked for complementary bids was necessary to demonstrate that he was aware of the falsity of his testimony before the grand jury. Evidence challenged under the second prong of his motion, namely evidence that he submitted, or agreed to submit, complementary bids for others, was so intertwined with proof of his solicitation of bids that one practice could not be adequately demonstrated without testimony about the others. Given this interplay, evidence that Watson

submitted bids for others has great probative value. We do not believe that this evidence was unnecessary since it was a crucial part of each witness' explanation of the manner in which the contractors allegedly sought to allocate construction projects among themselves. *Cf. United States v. Aleman*, 592 F.2d 881, 885–86 (5th Cir. 1979); *United States v. Jones*, 438 F.2d 461, 465–66 (7th Cir. 1971).

Any prejudice arising from the admission of evidence of Watson's submission of bids for others was slight. The judge properly instructed the jury concerning the proper use of this evidence.[11] We do not find, as Watson contends, that the jury was misled. This is not a case in which evidence of acts other than those charged in the indictment was misused or argued improperly to the jury. *See United States v. Vargas*, 583 F.2d 380 (7th Cir. 1978); *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974).

Our discussion has not addressed Watson's primary and broader request for exclusion of all evidence of his involvement with bid-rigging. Nowhere in the record do we find a specification of what this request entailed. To the extent the request covered proof of his solicitation of bids, it was properly rejected since that evidence was highly probative of the element of knowledge. To the extent it referred to Watson's submission of complementary bids, the request was duplicative of the more specific prong of the motion which we have discussed. We find the district court properly rejected both parts of Watson's motion *in limine*.

### V. *Jury Instructions*

 Finally, Watson objects to the trial court's failure to adopt six of his proposed jury instructions. Counsel discussed their respective proposed instructions with the trial judge at a conference before closing

---

10. Rule 403 provides:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11. In this regard, the judge charged:

 Certain testimony was received in evidence relating to questions and answers not charged in the indictment. Such evidence may be considered by you only with respect to the issues of knowledge, intent, motive or absence of mistake or accident.

arguments and then after summation, immediately prior to charging the jury. Neither at those times nor after the instructions were given to the jury did defense counsel make any specific objections to the charge as given or make specific objections to the court's failure to include defendant's proposed instructions. In fact, after the jury heard the charge and retired, defense counsel was asked if he had any objections to the instructions as given; he responded that he did not. In light of the requirements of Fed.R.Crim.P. 30,[12] such failure to place in the record specific objection to the alleged omissions precludes our review of the district court's refusal to include the six proposed instructions absent a determination that the omissions constituted plain error. *United States v. Wright*, 542 F.2d

975, 981–82 (7th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977);[13] *United States v. Barrett*, 539 F.2d 244, 249 (1st Cir. 1976); *United States v. Honneus*, 508 F.2d 566, 571 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). And we do not believe that this is an instance of plain error.

■ Defendant Watson's proposed instruction No. 2 on the elements of the offense and on the government's burden of proof was adequately covered by the court's instruction No. 14.[14] Similarly, Watson's proposed instruction No. 5 on the consideration to be given the testimony of accomplices was essentially a restatement of instruction No. 6 on the same subject which was given by the court.[15] The trial court

**12.** The Rule provides:

No party may assign as error any portion of the charge *or omission therefrom* unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury. (emphasis supplied)

**13.** Although in *United States v. Hollinger*, 553 F.2d 535, 541–43 (7th Cir. 1977), we overruled our holding in *Wright* on the issue of timeliness of objections to instructions, in no way did we retract or reverse the more basic requirement that specific objections be placed in the record.

**14.** In instruction No. 14, the court charged as follows:

The government has the burden of proving beyond a reasonable doubt each of the following essential elements to establish the offense charged in the indictment.

First, that the defendant gave testimony under oath before a United States grand jury, as charged in the indictment.

Second, that while so testifying the defendant made the false declaration or declarations as charged in the indictment.

Third, that in making the false declaration or declarations the defendant acted knowingly.

In deliberating, if you find from your consideration of all the evidence that each of these three essential elements has been proved beyond a reasonable doubt then your verdict should be guilty as charged, but if on the other hand you find from your consideration of all the evidence that any of the three essential elements has not been proved be-

yond a reasonable doubt then your verdict should be not guilty.

The burden is always upon the prosecution to prove each essential element of the offense charged beyond a reasonable doubt. The law never imposes upon the defendant in a criminal case the burden or duty of calling any witness or introducing any evidence.

Defendant's instruction No. 2 provided:

Three essential elements are required to be proved in order to establish the offense charged in the indictment, as follows:

First, That the defendant gave testimony under oath before a United States grand jury, as charged in the indictment;

Second, That while so testifying the defendant made one or more false declarations as charged in the indictment;

Third, That in the making of such false declaration or declarations the defendant acted with intent to violate his oath to tell the truth by representing as true a fact that was untrue and did so knowingly.

As stated before, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the offense charged. The law never imposes on the defendant in a criminal case the burden or duty of calling any witnesses or introducing any evidence.

**15.** The court's instruction No. 6 provided as follows:

An accomplice witness is one who testifies that he or she was involved in the commission of a crime with another defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case.

was under no obligation to adopt the language requested in the proposed instruction since the charge given to the jury clearly and correctly stated the substance of the law. *United States v. Zarattini, supra,* 552 F.2d at 759.

■ In charging the jurors on the evaluation of testimony, the court gave a general, though abbreviated, instruction on witness credibility,[16] an instruction on impeachment by prior inconsistent statements,[17] and an instruction on impeachment by prior conviction.[18] Defendant urges reversal because of the omission of an additional proposed instruction on the weight to be given the testimony of immunized witnesses.[19] While inclusion of that instruction would have been desirable,[20] we believe the general instruction on credibility, the instruction on accomplice testimony, and defense counsel's development of the immunity issue in cross-examination and summation adequately alerted the jury to the caution necessary in weighing the testimony of immunized witnesses. *Cf. United States v. Rucker,* 586 F.2d 899, 904 (2d Cir. 1978); *United States v. Morgan,* 555 F.2d 238, 242–43 (9th Cir. 1977); *United States v. Curry,* 512 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975). The two witnesses who testified under grants of immunity, Henry Eppel and Leonard Tobey, were both accomplices in the alleged bid-rigging scheme. Thus, the testimony which an immunized witness instruction would have told the jurors to view with care was the same testimony covered by the cautionary instruction on accomplice testimony.

---

Defendant preferred the following language:
 An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of one who asserts by his testimony that he is an accomplice, may be received in evidence and considered by the jury, even though not corroborated by other evidence, and given such weights as the jury feels it should have. The jury, however, should keep in mind that such testimony is always to be received with caution and considered with great care.

16. The court's instruction No. 5 provided:
 You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In determining the credit to be given any witness you may take into account the witness' ability and opportunity to observe, the witness' memory, the witness' manner while testifying, any interest, bias or prejudice a witness may have, and the reasonableness of the witness' testimony considered in the light of all the evidence in the case.

17. The court's instruction No. 7 stated:
 The credibility of a witness may be attacked by introducing evidence that on some former occasions the witness made a statement or acted in a manner inconsistent with the testimony of the witness in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given the testimony of that witness.

18. On this point, the court's charge No. 8 instructed:

 The credibility of a witness may be attacked by introducing evidence that he has been convicted of a crime. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness.

19. Defendant's proposed instruction No. 3 provided:
 One who testifies under a grant of immunity with a promise from the government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.
 Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness's [sic] own interest, for a witness who realizes that he may procure his own freedom by incriminating another has a motive to falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserves.

20. The trial judge agreed with the government that the requested instruction on immunity was argumentative. We think the government's objection was erroneously taken and note that the proposed instruction parroted the language of Devitt and Blackmar's standard instruction on the subject. *See* 1 E. DeVitt & C. Blackmar, Federal Jury Practice and Instructions § 17.04 (3d ed. 1977).

Our conclusion on the need for an immunity instruction might be different if the jury had not already received a warning covering the identical testimony. *Compare United States v. Morgan, supra*, 555 F.2d at 243; with *United States v. Leonard*, 494 F.2d 955, 959–62 (D.C.Cir. 1974).

 Watson also charges error in the omission of his requested instruction on the weight to be given the testimony of witnesses who have been convicted of perjury.[21] Again, we find that the court's instructions—specifically those on impeachment by prior inconsistent statements and by evidence of prior convictions—were sufficient to apprise the jury of the considerations they were to give to the testimony of government witness Leonard Tobey. *Cf. United States v. Polizzi*, 500 F.2d 856, 878 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Evanchik*, 413 F.2d 950, 954 (2d Cir. 1969); *United States v. Ross*, 322 F.2d 306, 307 (4th Cir. 1963), *cert. denied*, 375 U.S. 970, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964). The failure to grant defendant's requested instruction on perjury is not plain error.

 The last two instructions which Watson contends should have been included in the court's charge concern the element of knowledge. As noted above, conviction under § 1623(a) requires a finding that the defendant made a false statement to the grand jury, knowing the declaration to be false. In addition to describing the elements of the offense to the jury,[22] the court instructed the jury on the definitions which they were to apply to the words "false" and "knowingly."[23] The defendant urges error in the court's refusal to include the following requested instruction No. 1 in the charge:

> To establish intent in the case the government must prove that the defendant *deliberately* and *purposely* violated his oath to tell the truth by testifying to the truth of a fact which defendant did not believe to be true. Such intent may be determined from all the facts and circumstances surrounding the case.
>
> An act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. (emphasis supplied)

Obviously, the second paragraph of this requested instruction is repetitious of the court's charge on the definition of knowledge. To the extent that the first paragraph requires proof of a mental state different than that characterized by "knowledge," we believe the request represents a misstatement of the law.[24]

 Watson objects to the court's refusal to give the following proposed instruction No. 9:

> The defendant may not be found guilty of perjury simply because he gave testimony which is factually incorrect. He may have given incorrect testimony because of surprise, confusion, haste, inadvertence, honest mistake as to facts, carelessness or negligence. As has been said, you may not find him guilty unless you find beyond reasonable doubt that the giving of false testimony was *willful*, and that the other elements of the offense are present. (emphasis supplied)

There is no evidence, nor do we understand Watson to have contended at trial, that he made incorrect statements to the grand

---

21. Defendant's proposed instruction No. 4 provides:

 The testimony of an admitted perjurer should always be considered with caution and weighed with great care.

22. *Supra*, note 14.

23. In this regard, the judge charged:

 [12]. The term "false" in these instructions means a statement that was untrue when made and was known to be untrue by the person making it.

[13.] The term "knowingly" in these instructions, means to do an act voluntarily and intentionally and not because of mistake or accident or other innocent reason.

24. On the differing interpretations generally accorded the terms "purpose" and "knowledge," *see* Model Penal Code § 2.02(2)(a) & (b) and § 2.02(7) (1962). *See also* W. LaFave & A. Scott Handbook on Criminal Law § 28, at 197–98 (1972).

jury because of misunderstanding, surprise, confusion, haste and so forth. We believe the court's instruction that "knowingly" does not include acts made "because of mistake or accident or other innocent reason" was, in this respect, more than adequate. *See United States v. Pommerening*, 500 F.2d 92, 100 (10th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974). The final sentence of the proposed instruction, which would require the jury to find the violation "willful" as a prerequisite to conviction, is an incorrect statement of the law; while conviction under the federal perjury statute, 18 U.S.C. § 1621, requires a showing of willfulness, that element is not required to establish a violation of 18 U.S.C. § 1623. *See United States v. Lardieri*, 497 F.2d 317, 319–20 (3d Cir. 1974). We find no error in the district court's refusal to give this requested instruction.

AFFIRMED.