Charles T. WICKERSHAM

v.

UNITED STATES of America.

Civ. A. No. 1:95cv1046.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 20, 1996.

---

10. See footnotes 3 and 9, *supra*.

**552**

Richard Kuniansky, Dameris & Kuniansky, Houston, TX, for plaintiff.

Paul Naman, Asst. U.S. Atty., U.S. Attorney's Office, Beaumont, TX, for defendant.

*MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE's REPORT AND RECOMMENDATION*

SCHELL, Chief Judge.

Movant Charles T. Wickersham brought this motion to vacate, set aside or correct judgment pursuant to 28 U.S.C. § 2255.

The court heretofore referred this matter to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The magistrate judge recommends the motion be denied.

The court has received and considered the Report and Recommendation of United States Magistrate Judge filed pursuant to such referral, along with the record, pleadings and all available evidence. No objections to the Report and Recommendation of United States Magistrate Judge were filed by the parties.

*ORDER*

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate Judge's recommendations. The order referring this case to the magistrate judge is hereby **VACATED.**

***REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE***

HINES, United States Magistrate Judge.

This report addresses a motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] Movant Charles T. Wickersham asserts his conviction for making a false statement on an income tax return (tax fraud) is invalid because the court failed to submit to the jury an essential element of the offense, *viz.*, materiality of the false statement. Movant complains that the trial judge, found that movant's false statement

---

1. The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

was material as a matter of law. Movant concedes, however, that the trial judge followed governing circuit law at the time of trial.

The Fifth Amendment right to due process and the Sixth Amendment right to trial by jury require that the element of materiality be submitted to a jury for decision. *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *Gaudin,* however, was not decided until well after movant's conviction became final. Thus, the court must determine as a threshold matter whether *Gaudin* applies retroactively.

Under settled principles of analysis, movant may not claim the benefit of *Gaudin's* new rule unless it 1) placed movant's conduct beyond the reach of criminal law; or 2) announced a new watershed rule of criminal procedure that makes accurate verdicts substantially more likely and is essential to fundamental fairness. As *Gaudin* did not decriminalize movant's conduct, the first ground is inapplicable. As to the second, movant has not articulated any plausible basis for concluding that the trial judge's determination of materiality seriously diminished likelihood of an accurate verdict or resulted in a conviction without a finding of every element of the offense beyond a reasonable doubt by an impartial decision-maker. Accordingly, movant is not entitled to the benefit of the new *Gaudin* rule, and this report recommends denial of the motion.

### Indictment, Trial, Conviction and Appeal

On July 2, 1992, the federal grand jury for the Eastern District of Texas, Beaumont Division, returned an eight count indictment against movant, Wayne Frederick and Lester Winfree, all citizens of Orange County, Texas. They were charged with conspiracy to devise a scheme and artifice to defraud in violation of 18 U.S.C. § 371, and with three related substantive counts of mail fraud under 18 U.S.C. § 1341. Defendants Frederick and Winfree were commissioners of the Orange County Port and Navigation District (OCPND). The charged conspiracy involved Wickersham selling a structure called the Peveto Grain Elevator to OCPND at an inflated price and in disregard of standard procedures normally utilized when obtaining property for OCPND.

Movant was also charged with tax fraud, i.e., making a false statement on his tax return in violation of 26 U.S.C. § 7206(1). The alleged false statement was that the grain elevator was sold under threat of condemnation. Finally, movant was charged with engaging in a monetary transaction in property derived from unlawful activity in violation of 18 U.S.C. § 1957(a).

A jury trial was conducted between November 23, 1992 and December 8, 1992. The jury convicted movant on the tax fraud count, but acquitted him on all other charges. Regarding the tax fraud count, the district court without objection instructed the jury that materiality was not a question for it to decide. The court determined that the issue of materiality was a question of law to be decided by the court.[2] After the jury returned its verdict, the trial judge made a specific find-

---

2. The court instructed the jury regarding § 7206(1) as follows:

Count IV of the Indictment accuses Charles Wickersham of making false statements on an income tax return. Title 26, United States Code, Section 7206(1), makes it a crime for anyone willfully to make a false statement on an income tax return. "Willfully" means with intent to violate a known legal duty.

For you to find the defendant Wickersham guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First:* That the defendant signed an income tax return that contained a written declaration that it was made under penalties of perjury;

*Second:* That in this return the defendant falsely stated that it was true and correct as to every material matter because the defendant failed to report a taxable capital gains of $349,-641.00 realized from the sale of the Peveto grain elevator to the Orange County Navigation and Port District during 1989;

*Third:* That the defendant knew that statement was false; and

*Fourth:* That the defendant made the statement on purpose, and not as a result of accident, negligence or inadvertence.

If you find that the Government has proved these things, you need not consider whether the false statement was a material false statement, even though that language is used in the Indictment. This is not a question for the jury to decide.

You are instructed that the income tax laws of the United States provide that a capital gain

ing on the record that movant's false statement on his income tax return was material. The trial judge followed governing circuit law in removing the issue of materiality from the jury's consideration and making the finding as a matter of law.[3]

Movant appealed but raised only issues unrelated to materiality: (1) insufficient evidence, (2) prosecutorial misconduct, (3) error in giving a modified "Allen" charge, (4) error in not granting a new trial because jurors were improperly affected by the "Allen" charge, and (5) defective indictment. The Fifth Circuit Court of Appeals affirmed the conviction on August 5, 1994 in a published opinion. *United States v. Wickersham,* 29 F.3d 191 (5th Cir.1994).

### The Motion to Vacate

The present motion to vacate alleges that the court's charge to the jury violated movant's Fifth Amendment due process rights and Sixth Amendment right to trial by jury. Movant argues that the court incorrectly instructed the jury regarding the issue of materiality. Movant relies on a subsequent Supreme Court decision in *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444.

In *Gaudin,* the Court held that the element of materiality in a false statement case (18 U.S.C. § 1001) is an element of the offense that must be submitted to the jury for a decision. *Id.* at 520–22, 115 S.Ct. at 2319 (finding violation of 18 U.S.C. § 1001) Movant argues that there is no substantive distinction between the "materiality" element of 18 U.S.C. § 1001 and the "materiality" element of the tax fraud crime with which movant was charged and convicted.

need not be reported by a taxpayer as a taxable capital gain in the year of sale if the sale is made under the threat of condemnation.

3. *See United States v. Swaim,* 757 F.2d 1530, 1534 (5th Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985); *United States v. Hausmann,* 711 F.2d 615, 616–17 (5th Cir.1983).

4. "Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without estab-

### Analysis

A person convicted of a federal crime may move to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on four separate grounds: The sentence was imposed in violation of the constitution or laws of the United States; the court was without jurisdiction to impose the sentence; the sentence exceeds the statutory maximum sentence; and the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see United States v. Cates,* 952 F.2d 149, 151 (5th Cir.), *cert. denied,* 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992).

Movant correctly asserts that the rationale of *Gaudin* applies to a tax fraud conviction under 26 U.S.C. § 7206(1). *See United States v. McGuire,* 99 F.3d 671, 672–73 (5th Cir.1996) (per curiam). Thus, the assertion of constitutional error is not frivolous. However, this does not end the inquiry in movant's favor.

Under ordinary circumstances, courts considering Section 2255 motions determine first if the issue presented was raised and disposed of on direct appeal. If so, the matter cannot be relitigated by collateral attack. *United States v. Kalish,* 780 F.2d 506, 508 (5th Cir.), *cert. denied,* 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). If not, courts inquire why, and still refuse to entertain the motion unless the movant shows cause for not presenting the error on direct appeal and actual prejudice resulting from the error.[4]

Movant's conviction was affirmed by the Fifth Circuit Court of Appeals on November 1, 1994. The Supreme Court did not issue its decision in *Gaudin* until over seven months later. Thus, movant can show cause for not raising the error on direct appeal. But, for

lishing 'both "cause" for his procedural default and "actual prejudice" resulting from the error.' " *United States v. Acklen,* 47 F.3d 739, 741–42 (5th Cir.1995) (quoting *United States v. Shaid,* 937 F.2d 228, 231–32 (5th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992)). "This cause-and-actual-prejudice standard is significantly more rigorous than even the plain error standard [the court] applie[s] on direct appeal." *United States v. Gaudet,* 81 F.3d 585, 589 (5th Cir.1996).

movant to be entitled to relief based on *Gaudin*, that decision must apply retroactively. Thus, a threshold question is whether movant may apply the *Gaudin* rule to the instant case. A negative determination would moot any additional review of movant's claim.

### A. Retroactive Application of New Rules

■ The retroactivity analysis begins by noting that a motion under Section 2255 constitutes a collateral attack on a conviction. While new rules are applied on direct review,[5] they generally are not applied in collateral attacks. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) (plurality opinion).[6] Thus, when, as here, the motion to vacate sentence is based on an intervening change in law, and the conviction has become final prior to the new rule being announced, movant must satisfy a more stringent standard. To benefit from retroactive application of *Gaudin*, movant must demonstrate eligibility under settled principles designed to strike a balance between individual rights and societal interests in finality of convictions and in conservation of scarce judicial resources. *See Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).

■ Federal courts are barred, generally, from applying new constitutional rules of criminal procedure retroactively on collateral review. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. "[N]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* Under *Teague*, new rules may be applied retroactively in habeas proceedings only if they come within one of two narrow exceptions discussed later. The nonretroactivity doctrine applies equally to a novel application of an old rule. *String-*

*er v. Black*, 503 U.S. 222, 227–29, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992).

### B. Is *Gaudin* a "New Rule?"

■ "A holding constitutes a new rule within the meaning of *Teague* if it breaks new ground, imposes a new obligation on the States or the Federal Government, or was not *dictated* by precedent existing at the time the defendant's conviction became final." *Graham v. Collins*, 506 U.S. 461, 465–67, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1993) (citation and internal quotation marks omitted). A rule is "new" under *Teague* unless a reasonable jurist hearing the habeas petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor. *Id.* at 467, 113 S.Ct. at 898.

■ Prior to *Gaudin*, every circuit in the country except for the Ninth Circuit had taken the position that materiality was a question of law to be decided by the judge. *Gaudin*, 515 U.S. at 528, 115 S.Ct. at 2322. *Gaudin* was not a decision of statutory interpretation, reading a materiality element into any statute. *Gaudin* announced a new rule that the issue of materiality in false statement cases brought pursuant to 18 U.S.C. § 1001 is an element of the offense which must be presented to the jury for determination. *Id.* at 518–22, at 2318–19. Accordingly, *Gaudin* is clearly a new rule of criminal procedure. *See, e.g., McGuire*, 99 F.3d 671, 673–74 (DeMoss, J., dissenting); *United States v. Ismail*, 97 F.3d 50 (4th Cir.1996); *United States v. David*, 83 F.3d 638 (4th Cir.1996); *Bilzerian v. United States*, Nos. 95 Civ. 1215 RJW, 88 Cr. 962 RJW, 1996 WL 524340 (S.D.N.Y. Sept.13, 1996); *United States v. Nazon*, 936 F.Supp. 563 (N.D.Ind. 1996); *United States v. Holland*, 919 F.Supp. 431 (N.D.Ga.), aff'd, 85 F.3d 643 (11th Cir. 1996); *United States v. Pearson*, 897 F.Supp. 1147 (C.D.Ill.1995).

---

**5.** "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

**6.** "Given the 'broad scope of constitutional issues cognizable on habeas,' ... it is 'sounder, in adjudicating habeas petitions, generally to apply the law at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation.'" *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073.

### C. Do *Teague* Exceptions Apply?

■ Defendants collaterally attacking a final conviction may not use a new rule of constitutional procedure announced after their convictions are final unless one of two exceptions applies: (1) the new rule decriminalizes a class of conduct or prohibits giving a certain punishment to a class of defendants because of their status or offense, or (2) the new rule is a watershed rule of procedure that makes accurate verdicts substantially more likely and is essential to fundamental fairness. *See United States v. Nazon,* 936 F.Supp. 563, 568 & n. 1 (N.D.Ind.1996).

#### 1. First Exception

The first exception applies to new rules that place an entire category of conduct beyond the reach of the criminal law or addresses a "substantive categorical guarante[e] accorded by the Constitution." *Saffle v. Parks,* 494 U.S. 484, 494, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990). *Gaudin* clearly did not decriminalize any category of conduct. Therefore, this exception does not apply.

#### 2. Second Exception

##### a. Contours of the Exception

■ Articulating precise contours of the second exception is more difficult. In *Teague,* the plurality opinion referred to the second exception as "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 489 U.S. at 313, 109 S.Ct. at 1077. *Teague* also made clear that the exception applies to a narrow number of ground-breaking rules crucial to a criminal trial's basic function. *See Graham,* 506 U.S. at 477–78, 113 S.Ct. at 903; *Teague,* 489 U.S. at 313, 109 S.Ct. at 1076–77 (referring to "watershed rules of criminal procedure" and "bedrock procedural elements"); 2 JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 25.8, at 800–01 (2d ed.1994).

Subsequently, in *Sawyer v. Smith,* the Court emphasized that to qualify under *Teague's* second exception a rule "must not only improve accuracy, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990) (citations and internal quotation marks omitted). This decision affirmed the Fifth Circuit holding that the second exception is designed to redress constitutional violations that "so distort the judicial process as to leave one with the impression that there has been no judicial determination at all, or else skew the actual evidence crucial to the trier of fact's disposition of the case." *Sawyer v. Butler,* 881 F.2d 1273, 1294 (5th Cir.1989) (en banc), *aff'd sub nom. Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

In *Saffle v. Parks,* decided the same year as *Sawyer,* the Court observed that "[a]lthough the precise contours of this [second] exception may be difficult to discern, [the Supreme Court has] usually cited *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that the defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle,* 494 U.S. at 495–96, 110 S.Ct. at 1264.

In *Cage v. Louisiana,* the Supreme Court ruled that a jury charge was unconstitutional because it allowed a finding of guilt based on a degree of proof below that required by the due process clause of the Fourteenth Amendment. 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court implied that the *Cage*-type error is "implicit in the concept of ordered liberty" and therefore should be applied retroactively under *Teague. Gaston v. Whitley,* 67 F.3d 121, 122 (5th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2561, 135 L.Ed.2d 1078 (1996). Additionally, the failure to instruct a jury at all has been found to fit within the second exception of *Teague. Harmon v. Marshall,* 69 F.3d 963 (9th Cir.1995).

##### b. Application

The jury instruction omitted one of the elements of the offense, materiality, as this issue was considered an issue of law to be determined by the judge. It is now clear, however, that the instruction incorrectly re-

moved from the jury the issue of the materiality of the false statement under 26 U.S.C. § 7206(1). *McGuire,* 99 F.3d 671, 672–73. Having a jury rather than a judge determine materiality does not substantially enhance verdict accuracy or remedy some fundamental unfairness. Therefore, this is not a case which falls within the second exception to *Teague.*

Other courts which have addressed the retroactivity of *Gaudin* in collateral challenges agree. *See Nazon,* 936 F.Supp. at 563; *Holland,* 919 F.Supp. at 431.[7] The analysis in *Nazon* is pertinent, pithy and persuasive:

> What *Gaudin* essentially did was take the materiality decision from the judge and reassign it to the jury. Although judges and juries might go about making the decision in different ways and sometimes reach different conclusions, a jury is not likely to be regularly and substantially more accurate than a judge. Either way, the evidence is the same, the substantive law is the same, and the defendant has a competent, impartial decision-maker.
>
> . . .
>
> We prefer to have juries decide elements not necessarily because they are better able to decide them accurately, but because our tradition views them as a better general repository of the tremendous power of determining guilt or innocence. Thus, the *Gaudin* rule does not so much represent a change to better ensure accurate verdicts as a change to protect the right valued in our system and society, to have a lay jury decide guilt or innocence. *Gaudin* itself suggests as much.
>
> The *Gaudin's* rule's aim and effect regarding verdict accuracy also informs the analysis of the fundamental fairness aspect of the second *Teague* exception. . . . [A]s long as a conviction rests on a trier's finding of every element beyond a reasonable doubt, the defendant has received fundamentally fair procedure within the meaning of the second exception. Put another way, although the general right to have a materiality element proved beyond a reasonable doubt might belong to the *Teague* core of fundamental fairness, the specific *Gaudin* right to have the jury decide whether it has been proved does not. Either way, the defendant gets an accurate decision-maker, which ensures fundamental fairness.

*Nazon,* 936 F.Supp. at 570 (citations and footnotes omitted).

Only the Seventh Circuit has afforded Section 2255 relief based on *Gaudin.* In *Waldemer v. United States,* the defendant stood convicted of making a "false material declaration" to the grand jury in violation of 18 U.S.C. § 1623. 98 F.3d 306 (7th Cir.1996). The defendant moved for relief in a Section 2255 motion, arguing that *Gaudin* required reversal. The court conducted a cause and actual prejudice review without considering the threshold question of retroactivity.[8] Having examined the record and concluded that *no* fact finder ever determined beyond a reasonable doubt that the defendant's declarations to the grand jury were material to its investigation, the court held that the case produced a result that brought into question the fairness of the proceedings, thus requiring that the defendant's conviction be vacated.

The instant case is factually dissimilar because the trial judge made explicit findings of materiality. Accordingly, *Waldemer* is inapposite.

#### c. Materiality

In order for a statement to be material, "the statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Gaudin,* 515 U.S. at 509, 115 S.Ct. at 2313 (quoting *Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct.

---

7. Other cases have declined to apply *Gaudin* in collateral attacks, albeit for reasons other than those advanced in this report. See *Bilzerian v. United States,* Nos. 95 Civ. 1215 RJW, 88 Cr. 962 RJW, 1996 WL 524340 (S.D.N.Y. Sept.13, 1996); *United States v. Fuller,* No. 94–6922, 1996 WL 494064 (4th Cir. Aug.30, 1996) (unpublished).

8. *Gaudin* was decided the same day the Supreme Court denied Waldemer's petition for certiorari on direct appeal.

1537, 1546, 99 L.Ed.2d 839 (1988)). Here, the court made the following finding of materiality:

> [T]he statement which the jury has found to have been made which is the signing of an income tax return that contained a written declaration that was made under penalties of perjury, and that the return falsely stated that certain matters, because of the failure to report a taxable capital gain of $349,641, the court finds that that false statement as found by the jury was a material false statement, pursuant to Title 26, United States Code, Section 72061.

(Supp. to Trial Tr., at 2).

The issue of materiality was beyond any serious contest. The evidence was that movant stated that the Peveto Grain Elevator was sold under threat of condemnation. Under 26 U.S.C. § 1033, the gain realized on the sale of property under the threat of condemnation is not recognized under the Internal Revenue Code, provided replacement property is purchased within the statutory period. The purchase of replacement property within the statutory period was uncontested. The false statement, therefore, had a direct impact on the amount of taxes owed. It would, in short, have been impossible for a rational and impartial fact finder not to find that the false statement was material.

Thus, the case mirrors *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996). Because that case involved a direct appeal on a conviction under 18 U.S.C. § 1001 for making false statements, defendant faced a less stringent standard of review than here. Yet, even though the court of appeals concluded that the defendant made all requisite showings for relief under a "plain error" analysis, it declined, nevertheless, to grant a new trial. The court's opinion states:

> Here, the government presented evidence sufficient to convince any rational factfinder that the defendants' false statements were material. In fact, the issue of materiality was not even significantly disputed by the defendants at trial. Furthermore,

the district court acted properly according to established precedent when it decided that the statements were material, rather than allowing the jury to come to the same obvious conclusion. *It would be an unnecessary waste of judicial resources to retry this case based on the district court's failure to submit overwhelming evidence of a barely disputed issue to the jury.... As a result, we do not find that the district court's error brings into question the fairness, integrity, or reputation of judicial proceedings, and we decline the invitation to grant Ross a new trial.*

*Id.* at 1540–41 (citations omitted and emphasis added).

### Conclusion

Movant's conviction was affirmed by the Fifth Circuit Court of Appeals on November 1, 1994, over seven months prior to the decision in *Gaudin*. As movant's conviction was final prior to the decision in *Gaudin* and his claim does not fit either of the *Teague* exceptions, the new rule announced in *Gaudin* may not be applied retroactively to his motion to vacate sentence. Further, no useful purpose would be served by a new trial. Therefore, the motion should be denied.[9]

### Recommendation

Movant's motion to vacate, set aside or correct sentence should be denied.

### Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district

---

**9.** Because the *Gaudin* rule does not apply retroactively in movant's case, a further review (the cause and prejudice analysis) is unnecessary.

court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996)(en banc).